IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DAVID and SANDRA ABEYTA,

    Plaintiffs,

v.                                                          No. C-02-1453 JC

KARL A. MALONE CORPORATION–
ALBUQUERQUE and PRESTIGE
FINANCIAL SERVICES, INC.,

    Defendants.

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1. This action for damages arises from Defendant Karl Malone misrepresenting the history a used motor vehicle.

2. Defendant's actions give rise to claims for violations of the federal Motor Vehicle Information and Cost Savings Act, the New Mexico Unfair Practices Act, the New Mexico Motor Vehicle Dealers Franchising Act, and for fraud or misrepresentation.

### Jurisdiction

3. This Court has jurisdiction under the federal Motor Vehicle Information and Cost Savings Act, 49 U.S.C. §32710, and 28 U.S.C. §§1331, 1337. This Court has supplemental jurisdiction over the state claims under 28 U.S.C. §1367.

### Parties

4. Plaintiffs David and Sandra Abeyta ("the Abeytas") reside in Los Lunas, New Mexico. They are "transferees" as defined in 49 C.F.R. §580.3.

5. Defendant Karl A. Malone Corporation - Albuquerque ("Karl Malone" or "the dealer") is a New Mexico corporation and licensed car dealer, conducting a new and used car

business in Albuquerque, New Mexico. Defendant is a "dealer," as defined by 49 U.S.C. §32702(2), and a "transferor," as defined by 49 C.F.R. §580.3. Defendant is subject to the New Mexico Unfair Practices Act.

6.  Defendant Prestige Financial Services, Inc. ("Prestige") is a lender that finances motor vehicle transactions. Prestige is the holder of the motor vehicle installment sales contract in the transaction which is the subject of this lawsuit.

## Facts

7.  The Abeytas received an advertisement in the mail from Prestige, stating that the Abeytas had been pre-approved for credit to purchase a motor vehicle.

8.  In response to the advertisement, the Abeytas telephoned Prestige and did a credit application over the telephone.

9.  The next day, Prestige telephoned the Abetyas and instructed them to go to Karl Malone to pick out a vehicle.

10. Once they arrived at Karl Malone, the Abeytas looked at various vehicles. They became interested in a 2001 Ford Taurus ('the car").

11. The Abeytas asked the salesman about the history of the car.

12. The salesman told the Abeytas that the car was a "promo" car, that had been driven only by a salesman at Karl Malone.

13. Based on these representations, the Abeytas decided to buy the car.

14. In fact, Karl Malone had purchased the Taurus ("the car") from Team Fleet Financing Corporation, a rental car corporation.

15. Karl Malone affixed its signature to the title certificate to the car on February 28, 2002, and the title clearly showed the identity of the previous owner. The Abeytas attach a copy of that title certificate as Exhibit A.

16. The salesman did not disclose to the Abeytas that the car was a former daily rental car. The Abeytas would not have bought the car if they had known it was a daily rental car.

17. The cash sales price of the car was $14,952.26.

18. The Abeytas made a cash down payment of $2000.00. Karl Malone financed the balance. The Abeytas attach a copy of the Retail Installment Contract as Exhibit B.

19. Karl Malone failed to show the Abeytas the title certificate or to obtain their signatures on that title, in connection with the sale, as required by the Federal Motor Vehicle Information and Cost Savings Act, 49 U.S.C. §32705, and its regulations, 49 C.F.R. §580.5.

20. Karl Malone deliberately failed to show the Abeytas the title certificate, to hide from them the fact that the car they were buying had been a daily rental car.

21. Later, the Abeytas obtained the title history on the car and learned that it had been formerly owned by a rental car company.

22. As a result of the dealer's actions, the Abeytas suffered actual damages, including, but not limited to, paying a price grossly in excess of the fair market value of the car, increased finance charges, lost time, aggravation, frustration, and humiliation.

23. The Abeytas have made numerous payments to Prestige under the contract.

24. The contract (Exhibit B) states that the holder (Prestige) is liable and subject to all claims and defenses which the debtor (the Abeytas) could assert against the seller, up to the amount paid by the debtor under the contract.

## First Claim for Relief:
## Federal Motor Vehicle Information and Cost Savings Act

25. Defendant Karl Malone violated the Federal Motor Vehicle Information and Cost Savings Act by failing to give proper disclosures in transferring the car, in violation of 49 U.S.C. §§32701, *et seq.*

26. Karl Malone violated the Federal Motor Vehicle Information and Cost Savings Act with intent to defraud.

27. As a result of these violations, Defendants are liable to the Abeytas in an amount equal to three times actual damages or $1,500.00, whichever is greater, plus attorney's fees and costs.

## Second Claim for Relief: New Mexico Unfair Practices Act

28. The foregoing transactions occurred in the regular course of Karl Malone's trade or commerce, and its actions are subject to the New Mexico Unfair Practices Act.

29. The foregoing actions of Karl Malone constitute unfair or deceptive trade practices, as well as unconscionable trade practices, within the meaning of the New Mexico Unfair Practices Act, §57-12-2D, N.M.S.A. 1978.

30. Karl Malone knowingly and willfully engaged in these unlawful trade practices.

31. As a result of the foregoing acts and omissions, the Abeytas suffered actual damages.

32. The Abeytas are entitled to recover from defendants actual or statutory damages, actual or statutory damages trebled, plus costs and reasonable attorney's fees.

4

## Fourth Claim for Relief:  Fraud or Misrepresentation

33. Karl Malone induced the Abeytas to purchase the car by misrepresentation of material facts and omission of material facts, including but not limited to 1) that the car was a "promo" driven only by the dealership; and 2) failing to disclose that the car was a daily rental vehicle when asked the history of the car.

34. Karl Malone knew such representations to be false, or it made those representations recklessly, or Karl Malone had no reasonable grounds for believing those representations were true.  Karl Malone also knew that its omissions were material and important.

35. Karl Malone intended to deceive the the Abeytas and intended that they would rely upon its representations, which they did, to their detriment, suffering damages thereby.

36. The Abeytas are entitled to monetary damages in an amount to be proven at trial, and punitive damages should also be awarded against defendants.

## Fifth Claim for Relief: Motor Vehicle Dealers Franchising Act

37. Defendant Karl Malone is a motor vehicle dealer within the meaning of the New Mexico Motor Vehicle Dealers Franchising Act, §§ 57-16-1, *et seq.*, N.M.S.A. 1978.

38. The foregoing actions of Karl Malone willfully defrauded the Abeytas within the meaning of the Act.

39. Karl Malone sold the car to the Abeytas while misrepresenting its history and failing to disclose the true history of the car, when asked.

40. Karl Malone acted maliciously in this matter.

41. The Abeytas are entitled to recover from defendants actual damages, costs, reasonable attorney's fees, and punitive damages not to exceed three times the actual damages.

## Jury Demand

42. The Abeytas hereby demands trial by six-person jury on all issues so triable.

WHEREFORE, Plaintiffs pray that this Honorable Court:

A. Award statutory or treble actual damages for violation of the Federal Motor Vehicle Information and Cost Savings Act;

B. Award actual or statutory damages, trebled, for violation of the New Mexico Unfair Practices Act;

C. Award actual damages and punitive damages in an amount to be proven at trial for fraud or misrepresentation;

D. Award actual damages and punitive damages not to exceed three times the amount of actual damages for violation of the New Mexico Motor Vehicle Dealers Franchising Act;

E. Award reasonable attorney's fees and costs;

F. Grant such other relief as it deems just and proper.

Respectfully submitted,

LAW OFFICES OF FEFERMAN & WARREN

*(signature)*

SUSAN WARREN
Attorneys for Plaintiffs
300 Central Ave., SW, Suite 2000 East
Albuquerque, NM 87102
(505) 243-7773
(505) 243-6663 (fax)

# Exhibit A



**IMPORTANT:** Buyer (except for dealers) must apply to the Motor Vehicle Division within 30 days for transfer of title and registration. Federal and State law requires the seller (including dealers) to state the odometer reading upon transfer of ownership. ANYONE CONVICTED OF A FALSE ODOMETER STATEMENT WILL BE SUBJECT TO FINES AND/OR IMPRISONMENT.

**ASSIGNMENT OF TITLE FOR THE EXACT AMOUNT OF $** _____ I(we) hereby sell, assign, transfer and convey this ___28___ day of ___Feb___ Yr __02__ to

Buyer's Name(s): **Carl Malone Toyota**
Address: **3500 Lomas Blvd NE ABQ NM 87112**

the vehicle described on the front side of the Certificate of Title and warrant it at time of delivery to be free of any liens or encumbrances unless specified below. IF NO LIEN, WRITE WORD "NONE"

Name & Address of Lienholder: **None**
Lienholder No. (if any): _____ File Date _____ Maturity Date _____

**ODOMETER DISCLOSURE STATEMENT:** I(we) hereby certify that the ODOMETER READING of this vehicle is **28645** (NO TENTHS) miles and that stated mileage is (check one of the following): A. ☒ The actual mileage OR  B. ☐ Mileage in excess of mechanical limits OR  C. ☐ NOT the actual mileage. WARNING - ODOMETER DISCREPANCY

Signature(s) of Seller(s): X _____ **PENN FLEET FINANCING CORP.** Printed Name _____
Signature(s) for Buyer(s): X _____ Printed Name **Juli Chavez**

**FIRST REASSIGNMENT BY DEALER: FOR VALUE RECEIVED,** I hereby sell, reassign, transfer and convey this ___1st___ day of ___April___ Yr __2002__ to

Buyer's Name(s): **Sandra Abeyta or R. David Abeyta**
Address: **No 2 Holiday Dr Los Lunas NM 87031**

the vehicle described on the front side of the Certificate of Title and warrant it at time of delivery to be free of any liens or encumbrances unless specified below. IF NO LIEN, WRITE WORD "NONE"

Name & Address of Lienholder: **Prestige Financial PO Box 250 Draper UT 84020**
Lienholder No. (if any): _____ File Date **4-1-02** Maturity Date **10-1-07**

**ODOMETER DISCLOSURE STATEMENT:** I(we) hereby certify that the ODOMETER READING of this vehicle is **28645** (NO TENTHS) miles and that stated mileage is (check one of the following): A. ☒ The actual mileage OR  B. ☐ Mileage in excess of mechanical limits OR  C. ☐ NOT the actual mileage. WARNING - ODOMETER DISCREPANCY

Signature of Authorized Agent X _____ Printed Name **Juli Chavez**
Buyer's Signature X _____ Printed Name _____

**SECOND REASSIGNMENT BY DEALER: FOR VALUE RECEIVED,** I hereby sell, reassign, transfer and convey this _____ day of _____ Yr _____ to

Buyer's Name(s): _____
Address: _____

the vehicle described on the front side of the Certificate of Title and warrant it at time of delivery to be free of any liens or encumbrances unless specified below. IF NO LIEN, WRITE WORD "NONE"

Name & Address of Lienholder: _____
Lienholder No. (if any): _____ File Date _____ Maturity Date _____

**ODOMETER DISCLOSURE STATEMENT:** I(we) hereby certify that the ODOMETER READING of this vehicle is _____ (NO TENTHS) miles and that stated mileage is (check one of the following): A. ☐ The actual mileage OR  B. ☐ Mileage in excess of mechanical limits OR  C. ☐ NOT the actual mileage. WARNING - ODOMETER DISCREPANCY

Signature of Authorized Agent X _____ Printed Name _____
Buyer's Signature X _____ Printed Name _____

**THIRD REASSIGNMENT BY DEALER: FOR VALUE RECEIVED,** I hereby sell, reassign, transfer and convey this _____ day of _____ Yr _____ to

Buyer's Name(s): _____
Address: _____

the vehicle described on the front side of the Certificate of Title and warrant it at time of delivery to be free of any liens or encumbrances unless specified below. IF NO LIEN, WRITE WORD "NONE"

Name & Address of Lienholder: _____
Lienholder No. (if any): _____ File Date _____ Maturity Date _____

**ODOMETER DISCLOSURE STATEMENT:** I(we) hereby certify that the ODOMETER READING of this vehicle is _____ (NO TENTHS) miles and that stated mileage is (check one of the following): A. ☐ The actual mileage OR  B. ☐ Mileage in excess of mechanical limits OR  C. ☐ NOT the actual mileage. WARNING - ODOMETER DISCREPANCY

Signature of Authorized Agent X _____ Printed Name _____
Buyer's Signature X _____ Printed Name _____

**ANY ALTERATIONS OR ERASURES WILL VOID THIS TITLE**

# Exhibit B

**MOTOR VEHICLE SALES CONTRACT AND PURCHASE MONEY SECURITY AGREEMENT**

| Buyer(s): | SANDRA ABEYTA<br>DAVID ABEYTA | Seller/Creditor: | KARL MALONE TOYOTA |
|---|---|---|---|
| Address: | #2 HOLIDAY DR<br>LOS LUNAS NM 87031 | Address: | 8800 LOMAS BLVD NE<br>ALBUQUERQUE NM 87112 |

This is an agreement for the installment purchase by you of the motor vehicle described below. As used in this Contract, the words "you" and "your" mean the buyer or buyers who sign below. The words "we", "us" and "our" refer to the seller whose name and address appear above or to assignee if it accepts assignment of this contract. If assignee notifies you that it has accepted assignment of this contract you agree to make all of your payments to assignee. By signing below, you also agree to all of the terms on both sides of this Contract.

**This motor vehicle which you are purchasing is a:**

| NEW OR USED | YEAR MODEL | MAKE TRADE NAME | NO. CYL. | BODY TYPE | MODEL # OR SERIES | VEHICLE I.D.# |
|---|---|---|---|---|---|---|
| USED | 2001 | FORD | 6 | SE 4DR | TAURUS | 1FAFP53U11G181786 |

**EQUIPMENT:**
- [ ] AM/FM Stereo Tape
- [ ] 4 Sp. Trans.
- [ ] 5 Sp. Trans.
- [ ] T-Top/Sun
- [ ] Vinyl Roof
- [ ] Pwr. Strg.
- [ ] Auto. Trans.
- [ ] Air Cond.
- [ ] Cruise
- [ ] Pwr. Wind.
- [ ] Pwr. Seats
- [ ] Pwr. Doors
- [ ] Cust. Whls.

Misc. Equipment:

| | | Your payment schedule will be: (Payments are monthly unless otherwise indicated) |||
|---|---|---|---|---|
| **ANNUAL PERCENTAGE RATE** | The cost of your credit as a yearly rate. **21.00%** | Number of Payments | Amount of Payments | When Payments Are Due |
| | | 66 | 353.06 | MONTHLY BEGINNING 05/16/02 |
| **FINANCE CHARGE** | The dollar amount the credit will cost you. **$ 9666.18** | | N/A | |

**Insurance:** Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional cost.

| | | Type | Premium | Signature | |
|---|---|---|---|---|---|
| **Amount Financed** | The amount of credit provided to you or on your behalf. **$ 13635.78** | Credit Life Insurance | N/A | I want credit life insurance only | INSURED SIGNATURE |
| | | Disability Insurance | N/A | I want disability insurance only | INSURED SIGNATURE |
| **Total of Payments** | The amount you will have paid after you have made all payments as scheduled. **$ 23301.96** | Credit Life and Disability | N/A | I want credit life and disability insurance | INSURED SIGNATURE |
| | | Joint Credit Life Insurance | N/A | We want joint credit life insurance | INSURED SIGNATURE<br>INSURED SIGNATURE |
| **Total Sale Price** | The total cost of your purchase on credit including your down payment of $ **2000.00**<br>$ **25301.96** | Joint Credit Life and Single Disability Insurance | N/A | We want joint credit life and single disability insurance | INSURED SIGNATURE<br>INSURED SIGNATURE |

**Security:** You are giving a security interest in the motor vehicle being purchased.
**Late Charge:** If a payment is more than 10 days late, you will be charged **$15 or 5% of the payment**, whichever is less.
**Prepayment:** If you pay off early, you will not have to pay a penalty.
See the other portions of this Contract for additional information about non-payment, default, and any required repayment in full before the scheduled date.

**ITEMIZATION OF AMOUNT FINANCED**

1. Cash Price (incl. accessories) $ __14952.26__ + Sales Tax $ __448.57__ = Total Cash Price $ __15400.83__ (1)
2. Other Charges Imposed by Seller include:
    *a - Vehicle Service Contract (Term) _____ $ __N/A__ (2a)
    b - Dealer's Transfer Service Charge .......... + TAX .......................... $ __199.45__ (2b)
    c - Other (describe) _____ $ __N/A__ (2c)
    Total: Other Charges .................................................. $ __15600.28__ (2)
3. Trade Allowance
    Trade-in _____ $ __N/A__ - $ __N/A__ = $ __N/A__ (3)
    YR., MAKE AND MODEL      GROSS ALLOWANCE    PAYOFF       NET EQUITY
4. Cash Down Payment .................................................. $ __2000.00__ (4)
5. Total Down Payment † .................................................. $ __2000.00__ (5)
6. Unpaid balance of cash price / AMOUNT CREDITED TO YOUR ACCOUNT (Sum of items 1, 2, 3 & 4, minus item 5) ........ $ __13600.28__ (6)
7. AMOUNTS PAID TO OTHERS ON YOUR BEHALF INCLUDE:
    a - Payments to Public Officials for Official Fees:
    (1) Registration Fees $ __N/A__ + (2) Admin. Fees $ __35.50__ + (3) Excise Tax $ __N/A__
    + (4) Transaction Fees $ __N/A__ + (5) Postage Fees $ __N/A__ + (6) Trailer Insp. Fees $ __N/A__
    + (7) Gross Receipts Tax $ __N/A__ + (8) Other (describe) _____ $ __N/A__
    Total .................................................. $ __35.50__ (7a)
*b - Payments to Insurance Companies for Insurance Premiums:
    (1) Credit Insurance Premiums $ __N/A__ + (2) Property Insurance Premiums $ __N/A__

† If net equity plus cash down is negative, Item 7d shows excess.

| | | |
|---|---|---|
| *a - Vehicle Service Contract (Term) | $ N/A | (2a) |
| b - Dealer's Transfer Service Charge | TAX $ 45 | (2b) |
| c - Other (describe) | $ N/A | (2c) |
| Total: Other Charges | $ 15600.28 | (2) |

3. Trade Allowance
   Trade-in _____ YR., MAKE AND MODEL  $ N/A GROSS ALLOWANCE - $ N/A PAYOFF = $ N/A NET EQUITY (3)
4. Cash Down Payment .................................................. $ 2000.00 (4)
5. Total Down Payment† ................................................ $ 2000.00 (5)
6. Unpaid balance of cash price / AMOUNT CREDITED TO YOUR ACCOUNT (Sum of items 1, 2, 3 & 4, minus item 5) ..... $ 13600.28 (6)
7. AMOUNTS PAID TO OTHERS ON YOUR BEHALF INCLUDE:    †If net equity plus cash down is negative, Item 7d shows excess.
   a - Payments to Public Officials for Official Fees:
   (1) Registration Fees $ N/A + (2) Admin. Fees $ 35.50 + (3) Excise Tax $ N/A
   + (4) Transaction Fees $ N/A + (5) Postage Fees $ N/A + (6) Trailer Insp. Fees $ N/A
   + (7) Gross Receipts Tax $ N/A + (8) Other (describe) _____ $ N/A
   Total ................................................................ $ 35.50 (7a)
   *b - Payments to Insurance Companies for Insurance Premiums:
   (1) Credit Insurance Premiums $ N/A + (2) Property Insurance Premiums $ N/A
   Total ................................................................ $ N/A
   *c - Payments to _____ for _____ $ N/A
   d - Balance Due on Trade (Negative Equity) .......................... $ N/A
   Total Amount Paid to Others ......................................... $ 35.50 (7)
   *Dealer may retain a portion of these
8. Amount Financed — Amount of credit you will get (Item 6 plus Item 7) ... $ 13635.78 (8)

**Promise to Pay:** By signing below, you promise to pay us the Amount Financed, together with Interest calculated thereon at the Annual Percentage Rate. You agree to make your payments to us as set forth in the Payment Schedule shown above. Please note, however, that your final payment may change, depending upon your payment habits. We will apply each payment first to accrued interest and then to reduce your principal balance. This means your finance charge will be less when you pay early and more if you pay late. Any necessary adjustments in your total finance charge will be reflected in your final payment, for which we will send you a bill approximately 10 days before it is due. If a payment is more than 10 days late, you promise to pay us a late charge of $15 or 5% of the payment, whichever is less.
**SECURITY INTEREST:** YOU GRANT US A SECURITY INTEREST IN THE MOTOR VEHICLE DESCRIBED IN THIS CONTRACT TO SECURE ALL OF YOUR PAYMENT AND PERFORMANCE OBLIGATIONS TO US UNDER THIS CONTRACT. OUR SECURITY INTEREST ALSO COVERS (1) ACCESSORIES OR EQUIPMENT NOW OR HEREAFTER ATTACHED TO THE MOTOR VEHICLE; (2) RETURNED AND UNEARNED INSURANCE PREMIUMS AND CHARGES FOR SERVICE CONTRACTS WHICH ARE FINANCED UNDER THIS CONTRACT; (3) PROCEEDS OF ANY LIFE, HEALTH OR ACCIDENT INSURANCE AGREEMENT FINANCED UNDER THIS CONTRACT; (4) PROCEEDS OF ANY INSURANCE POLICIES OR SERVICE CONTRACTS ON THE MOTOR VEHICLE; AND (5) PROCEEDS OF THE MOTOR VEHICLE.
**Property Insurance:** You promise to keep the motor vehicle described above insured for its full value against loss or damage and with a loss payable endorsement in our favor. YOU MAY OBTAIN YOUR REQUIRED INSURANCE FROM ANY COMPANY ACCEPTABLE TO US; HOWEVER, THE DEDUCTIBLE UNDER YOUR POLICY CANNOT EXCEED $500.

You intend to use the vehicle primarily for  [XX] personal, family, or household purpose   [ ] commercial, industrial or agricultural production purposes

THIS CONTRACT IS SUBJECT TO THE ADDITIONAL PROVISIONS SET FORTH ON THE BACK. PLEASE READ THE BACK CAREFULLY. IT CONTAINS A LIMITATION ON WARRANTIES AND OTHER IMPORTANT PROVISIONS.

**NOTICE TO THE BUYER:** 1. Do not sign this Contract before you read it or if it contains any blank spaces. 2. You are entitled to an exact copy of the Contract you sign. 3. You should obtain from Seller a copy of any warranty or service contract offered as a part of this Contract. 4. This sale is subject to approval of your credit by Seller and acceptance of this Contract by Assignee.

**NOTICE TO BUYER:** LIABILITY INSURANCE FOR BODILY INJURY CAUSED TO YOURSELF OR TO OTHERS OR PROPERTY DAMAGE CAUSED TO OTHERS IS NOT PROVIDED WITH THIS AGREEMENT. IF YOU DESIRE LIABILITY INSURANCE COVERAGE, YOU SHOULD OBTAIN SUCH COVERAGE FROM AN AGENT OF YOUR CHOICE.

Dated this __1st__ day of __APRIL__, 20 _02_
SELLER: __KARL MALONE TOYOTA__
By _____
Title __Business Mgr__

Buyer acknowledges receipt of a fully completed copy of this Contract.
*BUYER/DEBTOR _Sandra Abeyta_
*BUYER/DEBTOR _____

*OTHER OWNERS: If you will be shown on the certificate of title as an owner of the vehicle but do not want to be separately liable to pay this debt, please sign below to give us a security interest in the motor vehicle, its proceeds, any physical damage insurance policy and any refunds of insurance premiums.

SIGNATURE _____ 04/01/02    SIGNATURE _____ 04/01/02

## ASSIGNMENT

Seller hereby assigns its rights hereunder to the below designated Assignee subject to acceptance by Assignee under the terms and conditions of a Dealer Agreement ([ ] Recourse [ ] Non-Recourse) previously entered into between Seller and Assignee, and in any event in accordance with the terms, conditions and warranties of the Seller's Assignment and Warranty on reverse side hereto.

For Dealer Proceeds Only Line 4 Plus Line 5a
$ 13635.78

SELLER __KARL MALONE TOYOTA__   DATED ___ BY ___ AUTHORIZED SIGNER ___ TITLE ___

Assignee: (Holder) __PRESTIGE FINANCIAL__    Branch __DRAPER__

Rev. 1/94, Rev. 1/97, Rev. 10/98, Rev. 7/01

**BUYERS COPY**

# ADDITIONAL TERMS, AGREEMENTS AND CONDITIONS

1. It is agreed that:
   (a) If the Property described on the reverse side is used primarily for personal, family or household purposes, the following provision shall apply:

**NOTICE: Any holder of this Consumer Credit Contract is subject to all claims and defenses which the Debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the Debtor shall not exceed amounts paid by the Debtor hereunder.**

   (b) If the Property described on the reverse side is used primarily for commercial, industrial or agricultural production purposes, Buyer will not assert any claim or defense against Assignee except of a type which may be asserted against a holder in due course of a negotiable instrument.

2. *Buyer acknowledges express intent to hereby waive and abandon all personal property exemptions granted by law upon the Property which is the subject of this Contract. NOTICE: By signing this Contract, Buyer waives all rights provided by law to claim such property exempt from process.*

3. **ATTENTION USED CAR AND DEMONSTRATOR BUYER(S):**
The information you see on the window form for this vehicle is part of this contract. Information in the window form overrides any contrary provisions in the Contract of Sale. By signing this contract, you acknowledge receipt of a copy of the window form.

4. **DEBTOR'S REPRESENTATIONS, WARRANTIES AND AGREEMENTS:**
Debtor represents, warrants and agrees: Any true and correct carbon, photographic or other reproductive copy of this Purchase Money Security Agreement may be filed or recorded as a Financing Statement. The Property will be principally stored at Debtor's address on the face hereof.

Debtor: will permit the Holder of this Contract to examine the Property at any time; will maintain the Property in good condition and repair; will not permit the Property to be permanently removed from the State of New Mexico without the prior written consent of the Holder; will not permit the Property to be removed from Debtor's possession; will not permit the Property to be attached by any lien or incumbrance or adverse claim of any character whatsoever, whether for storage, repairs, or otherwise, justified or unjustified; will not attempt to sell, transfer or assign Debtor's right, title or interest in the Property or this Contract in contravention of these security interests granted herewith; will pay all taxes and assessments of every character levied or assessed against the Property, this Contract and the indebtedness represented hereby.

Time is of the essence of this Contract. The acceptance by Seller or Assignee of partial payments shall not in any manner modify the terms of this Contract and such acceptance shall not be construed as a waiver of any subsequent defaults on Debtor's part nor shall it waive the "time is of the essence" provision. Any payment amount received by Seller or Assignee in addition to or in excess of a regular scheduled payment may be applied first to accrued late charges and collection charges (if any) and then to interest due and the balance to principal balance outstanding. This Contract is not assignable by Debtor except with the prior written consent of Seller or Assignee. Debtor agrees that it will not use or permit the Property to be used for any unlawful purposes, not to be used for hire, nor will Debtor allow any person to operate or use the Property who is not allowed under the terms of the insurance policies herein required to so operate or use the Property.

Any written notice required to be given Debtor if mailed by ordinary mail, postage prepaid, to Debtor's mailing address given herein or to Debtor's most recent address as shown by a "Notice of Change of Address" on file with Seller or Assignee shall be deemed reasonable notification.

5. **INSURANCE:**
Debtor agrees to keep the Property insured at its own expense against fire, theft, transportation, collision and such other risks as Seller or Assignee shall designate; such insurance shall be for an amount not less than the balance due under this Contract and shall be in force so long as any part thereof remains unpaid; such insurance is to be placed in insurance companies acceptable to Seller or Assignee and loss thereon is to be paid to Seller or Assignee and Debtor as their interests may appear. Debtor hereby requests and authorizes Seller or Assignee at Seller's or Assignee's option and without obligation to do so, to pay the premiums either for such insurance or similar insurance protecting Seller or Assignee only, adding same to principal balance then owing or by an advance which constitutes additional indebtedness and is secured hereunder and payable in additional installments due on this Contract. The policies therefore shall be held by Seller or Assignee until this Contract is fully performed.

If Seller or Assignee retakes possession of the Property, the insurance policies thereon shall become the sole property of Seller or Assignee and Debtor shall have no further interest therein. Debtor hereby assigns to Seller or Assignee the proceeds of all such insurance to the extent of the unpaid balances hereunder and directs any insurer to make payments directly to Seller or Assignee in the event of any default hereunder. Seller or Assignee is authorized to cancel any insurance and credit any premium refund against said unpaid balances.

Debtor authorizes Seller or Assignee, at its option and without obligation to do so, to discharge taxes, liens, security interests or other encumbrances at any time levied or placed on the Property. Debtor hereby agrees, if any insurance is placed and paid for by Seller or Assignee, to reimburse Seller or Assignee on demand or on the basis of a designated payment schedule (as communicated to Debtor by Seller...

9. **EVENTS OF DEFAULT:**
   (a) Any one of the following shall constitute an event of default:
   (1) Failure of Debtor to pay when due any indebtedness secured hereby.
   (2) If any warranty, representation or statement made herein or furnished to Seller or Assignee by or on behalf of Debtor in connection with this Contract proves to have been false in any material respect when made or furnished.
   (3) The commencement of any bankruptcy, arrangement, reorganization, insolvency, receivership or similar proceedings by or against Debtor or any guarantor or surety for Debtor.
   (4) If the Property is sold or disposed of or a competing security interest is created with respect thereto.
   (5) The occurrence of any adverse change in the financial condition of Debtor deemed material by Seller or Assignee or if, in the judgement of Seller or Assignee, the Property becomes unsatisfactory in character or value; or if Seller or Assignee shall deem itself insecure.
   (6) If Debtor defaults in performing any of its obligations, promises, covenants or agreements contained herein or in any agreement, paper or document given by Debtor to Seller or Assignee.
   (7) If Debtor uses the collateral in violation of any law or governmental regulation.
   (8) If Debtor fails to keep and maintain exclusive possession of and title to the Property.
   (9) If Debtor fails to pay promptly when due all taxes, liens, fees, charges and assessments upon the Property or fails to keep the Property in good condition and repair or fails to keep the Property properly insured at all times with an insurance company or companies acceptable to Seller or Assignee and with Loss Payable to Seller or Assignee as its interests may appear, against fire (with extended coverage), theft, physical damage and such other risks and in such amounts as all risks, as Seller or Assignee shall require.

   (b) Any one of the following shall constitute an event of default if, in Seller's or Assignee's opinion, such occurrence itself, or such occurrence together with surrounding circumstances materially increase Seller's or Assignee's risks with regard to repayment of the indebtedness due it:
   (1) Death or incompetence of Debtor.
   (2) If the Property is levied upon or seized upon under any levy, attachment, garnishment, writ or other legal process, or if any lien is attached thereto.
   (3) If the Property is lost, stolen or suffers substantial damage or destruction.

10. **RIGHTS AND REMEDIES:**
Upon the happening of any of the foregoing Events of Default and at any time thereafter, Seller or Assignee may, at its option and without notice to Debtor, declare all of the indebtedness of the Debtor to Seller or Assignee to be immediately due and payable, and Seller or Assignee shall have the rights, options, duties and remedies of a Secured Party, and Debtor shall have the rights and duties of a Debtor, under the Uniform Commercial Code as adopted in the State of New Mexico; and without limitation thereto, Seller or Assignee shall have the following specific rights:
   (a) To take immediate possession of the Property without notice or resort to legal process and for such purpose to enter upon any premises on which the Property or any part thereof may be situated and remove the same therefrom or, at its option, to render the Property unusable.
   (b) To make or have made any repairs deemed necessary or desirable, the cost of which is to be charged to Debtor.
   (c) To apply the proceeds realized from the disposition of the Property according to law and to payment of reasonable attorneys' fees and legal expenses incurred by Seller or Assignee, whether or not suit be filed.
   (d) If the proceeds realized from the disposition of the Property shall fail to satisfy all of the obligations of Debtor to Seller or Assignee hereunder, Debtor shall pay any deficiency balance to Seller or Assignee upon Seller's or Assignee's demand.

Seller or Assignee may retake possession of any other goods situated upon or contained within the Property at the time of repossession of the Property, wherever such other goods may be, and hold the same for Debtor at Debtor's risk without liability on the part of Seller or Assignee, and Debtor shall be liable for any charges for storing such goods incurred by Seller or Assignee. Any repossession of the Property shall not affect Seller's or Assignee's right, hereby confirmed by Debtor, to retain all payments made prior thereto by the Debtor hereunder. In the event of repossession of the Property, Seller or Assignee shall have all rights and remedies provided and permitted by law. Debtor authorizes Seller or Assignee to obtain one or more credit reports concerning Debtor at any time any indebtedness of Debtor is outstanding.

11. **GENERAL:**
If Seller or Assignee refers this Contract to an attorney to enforce Seller's or Assignee's remedies hereunder, Debtor will pay all legal fees not to exceed 15% of the balance due and payable under this Contract, where the Contract is referred to any attorney not a salaried employee of Seller or Assignee, plus all expenses incurred, whether or not suit is filed, together with interest thereon until paid at the contract rate. This transaction is being entered into and consummated in New Mexico. This transaction and all rights and duties of the parties will be governed solely by the **law of New Mexico**, and not by the law of any other State, Territory, Tribe or other authority. All terms used herein which are defined in the Uniform Commercial Code of New Mexico shall have the same meaning therein as in the Code. Any provisions found to be invalid shall not invalidate the remainder hereof. Waiver of any default shall not constitute waiver of any subsequent default. If this Contract is signed by more than one Debtor, the singular word "Debtor" shall include the plural, and the obligations of all such Debtors shall be joint and several. "Seller"

theft, transportation, collision and such other risks as Seller or Assignee shall designate; such insurance shall be in an amount less than the balance due under this Contract and shall be in force so long as any part thereof remains unpaid; such insurance is to be placed in insurance companies acceptable to Seller or Assignee and loss thereon is to be paid to Seller or Assignee and Debtor as their interests may appear. Debtor hereby requests and authorizes Seller or Assignee at Seller's or Assignee's option and without obligation to do so, to pay the premiums either for such insurance or similar insurance protecting Seller or Assignee only, adding same to principal balance then owing or by an advance which constitutes additional indebtedness and is secured hereunder and payable in additional installments due on this Contract. The policies therefore shall be held by Seller or Assignee until this Contract is fully performed.

If Seller or Assignee retakes possession of the Property, the insurance policies thereon shall become the sole property of Seller or Assignee and Debtor shall have no further interest therein. Debtor hereby assigns to Seller or Assignee the proceeds of all such insurance to the extent of the unpaid balances hereunder and directs any insurer to make payments directly to Seller or Assignee in the event of any default hereunder. Seller or Assignee is authorized to cancel any insurance and credit any premium refund against said unpaid balances.

Debtor authorizes Seller or Assignee, at its option and without obligation to do so, to discharge taxes, liens, security interests or other encumbrances at any time levied or placed on the Property. Debtor hereby agrees, if any insurance is placed and paid for by Seller or Assignee, to reimburse Seller or Assignee on demand or on the basis of a designated payment schedule (as communicated to Debtor by Seller or Assignee or the insurance carrier) for any payment made for insurance or any expense incurred by Seller or Assignee pursuant to this authorization, plus interest on all sums so expended until paid at an interest rate not to exceed the annual percentage rate contracted for and disclosed on the front side of this Contract (the Contract rate).

### 6. DELINQUENCY CHARGE:
If any payment due under this Contract has not been paid in full within 10 days of its due date, Buyer will pay an additional charge in the amount of 5% of the delinquent payment, or $15.00, whichever is less (which is not in lieu of finance charges accrued or accruing). If Buyer's delinquency requires additional collection efforts and collection charges, all costs incurred, including returned check charges, will be paid by Buyer, which charges may include attorneys' fees

### 7. ACCELERATION:
If any scheduled payment is not paid when due, all unpaid amounts may be declared immediately due and payable in full, and Buyer's privilege to pay all sums due in installments will thus be terminated.

### 8. PREPAYMENT:
Buyer may prepay the unpaid principal balance in full or in part at any time without penalty, provided all interest charges and other charges accrued to date of prepayment are paid. Finance charges accrue on a daily basis until payment in full is made and, therefor, no interest refund will be due upon any prepayment.

Seller or Assignee may retake possession of any other goods situated upon contained within the Property at the time of repossession of the Property, wherever such other goods may be, at the same risk to Debtor as Debtor's risk without liability on the part of Seller or Assignee, and Debtor shall be liable for any charges for storing such goods incurred by Seller or Assignee. Any repossession of the Property shall not affect Seller's or Assignee's right, hereby confirmed by Debtor, to retain all payments made prior thereto by the Debtor hereunder. In the event of repossession of the Property, Seller or Assignee shall have all rights and remedies provided and permitted by law. Debtor authorizes Seller or Assignee to obtain one or more credit reports concerning Debtor at any time any indebtedness of Debtor is outstanding.

### 11. GENERAL:
If Seller or Assignee refers this Contract to an attorney to enforce Seller's or Assignee's remedies hereunder, Debtor will pay all legal fees not to exceed 15% of the balance due and payable under this Contract, where the Contract is referred to any attorney not a salaried employee of Seller or Assignee, plus all expenses incurred, whether or not suit is filed, together with interest thereon until paid at the contract rate. This transaction is being entered into and consummated in New Mexico. This transaction and all rights and duties of the parties will be governed solely by the **law of New Mexico**, and not by the law of any other State, Territory, Tribe or other authority. All terms used herein which are defined in the Uniform Commercial Code of New Mexico shall have the same meaning therein as in the Code. Any provisions found to be invalid shall not invalidate the remainder hereof. Waiver of any default shall not constitute waiver of any subsequent default. If this Contract is signed by more than one Debtor, the singular word "Debtor" shall include the plural, and the obligations of all such Debtors shall be joint and several. "Seller" means the actual seller and, after assignment, "Holder" means Financing Institution. All words used herein shall be construed to be of such gender and number as the circumstances require and all references herein to Debtor shall include all other persons primarily or secondarily liable hereunder. This Contract shall be binding upon the heirs, personal representatives, successors and assigns. **This Contract constitutes the entire agreement between the parties and may not be altered or amended except by a writing signed by the Debtor and Seller or Assignee.**

### 12. DISCLAIMER OF WARRANTIES AND REMEDIES:
UNLESS OTHERWISE SPECIFIED IN WRITING, THIS VEHICLE IS SOLD **AS IS**, WITHOUT ANY WARRANTY, EXPRESS OR IMPLIED. IF ANY WARRANTY IS DEEMED TO BE GIVEN CONCERNING THE VEHICLE, OR IF THE VEHICLE IS SOLD WITH A SERVICE CONTRACT, THE TERMS OF SUCH WARRANTY OR SERVICE CONTRACT ARE AS PROVIDED THEREIN. ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE ARE LIMITED TO THE DURATION OF SUCH WARRANTY OR SERVICE CONTRACT, AND DEBTOR'S EXCLUSIVE REMEDY IS REPAIR OR REPLACEMENT OF DEFECTIVE PARTS. SELLER AND ASSIGNEE ARE NOT LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF ANY SUCH WARRANTY OR SERVICE CONTRACT.

## SELLER'S ASSIGNMENT AND WARRANTY

For value received, Seller hereby sells, assigns and transfers to Holder (Assignee), all right, title and interest in and to the within Contract, the Property and goods therein described and all monies due and to become due thereunder. Seller warrants that the signature of Debtor herein is genuine, that the title to the aforesaid Property rests in Seller; that the cash downpayment shown has actually been received by Seller and no part thereof was loaned to Buyer by or through Seller; that the Property is free from any liens and/or encumbrances except the lien and/or encumbrance created by this Contract; that the Property has been delivered into the possession of Debtor named therein; that Debtor was of legal age and competent to execute this Contract at date hereof; and that the Property was not salvage; and that, if this transaction is subject to regulation by any state or federal law or trade rule/regulation, including, but not limited to, the Federal Consumer Credit Protection Act, Truth in Lending Simplification and Reform Act, Magnuson Moss Warranty–Federal Trade Commission Improvement Act, Equal Credit Opportunity Act or State Home Solicitation and Referral Sales Act, the transaction was consummated in compliance with such law(s) and any regulations promulgated pursuant thereto and that, before offering to sell this Contract to Assignee, the requisite period, wherein Buyer had the right to rescind such transaction had expired and such Buyer had not rescinded the transaction; that this Contract and debt evidenced thereby is not, and will not be, subject to any claims, disputes, complaints, offsets, counterclaims or defenses of any kind during the time the said debt remains unpaid; and that this Contract, or a financing statement covering the collateral described in this Contract, has been duly filed of record with the proper governmental office or agency to the extent and in the manner necessary to perfect an uninterrupted paramount purchase money security interest in Seller or its Assignee.

Seller unconditionally guarantees to Assignee the full and immediate payment and performance of this Contract with respect to which any one or more of the foregoing warranties or representations is breached or faults and hereby agrees to repurchase this Contract upon the occurrence of any such breach of warranty or faults representation immediately upon demand by Assignee for a cash amount equal to the net unpaid balance of this Contract by direct cash payment from Seller to Assignee and not by recourse to or adjustment in any dealer reserve or other such accounts. Seller further hereby agrees to indemnify and hold Assignee harmless from loss, claims, damages, costs, expenses and reasonable attorneys' fees incurred or sustained by Assignee resulting from or arising out of such obligations under this Contract determined to be due to any claim or defense Buyer may now or in the future have against Seller, relating to the transaction herein described. If the Assignee's and/or Seller's rights and duties hereunder be placed in the hands of an attorney for interpretation or enforcement, the prevailing party shall be entitled to receive and collect from the losing party all court costs and expenses incurred plus reasonable attorneys' fees.

Seller waives all demands and notices of default and consents that, without notice to the Seller, Assignee may extend time of payments or compound or release, by operation of law or otherwise, any rights against Buyer or any other obligor. Assignee shall not be bound to take any steps necessary to preserve any rights in this Contract or any accompanying agreements or documents against prior parties, which Seller hereby agrees to do.

IT IS EXPRESSLY UNDERSTOOD AND AGREED that any method of assignment herein provided shall not be deemed to relieve Seller of and from any liability for the breach of any warranties, representations, or agreements contained herein or in this Contract.

## GUARANTY

Undersigned, jointly and severally, guarantee payment of and promise(s) to pay all amounts owing under this Contract and the payment upon demand of the entire amount owing on this Contract in the event of default in payment by Buyer named therein. Undersigned waives notice of performance, demands for performance, notice of non-performance, protests, notice of protests, notice of dishonor, notice of acceptance of this guarantee, of any extensions in time of payment, of sale of any of the collateral and of all other notices to which the undersigned would be otherwise entitled by law and agrees to pay all amounts owing thereunder upon demand, without requiring any action or proceeding against Buyer, and specifically waives any right to require action against Buyer. Undersigned agree to deliver to Seller or, after assignment, to Assignee timely financial statements and any other information relating to the Undersigned's financial condition as may be reasonably requested.

Dated at _____     Guarantor _____

Date _____     Guarantor _____